Paul C. Wilson, Judge,
dissenting.
I respectfully dissent. I agree with the discipline recommended by the disciplinary hearing panel (“DHP”) for the reasons expressed in Judge Fischer’s dissenting opinion. I write separately, however, to address the mistaken impression that it is appropriate for Respondent to solicit communications from members of the bar and judiciary for the purpose of influencing the Court’s resolution of this matter.
■ On September 1, 2015, a copy of the DHP’s decision was served on Informant and Respondent. On September 17, Respondent notified the Advisory Committee that he would not accept the DHP’s recommendation. As a result of this rejection, the matter was set for briefing and argument in this Court.
Five months after the DHP’s decision, and barely three weeks before the argument date, in this Court, Respondent solicited letters of support from members of the bar and judiciary. One of these solicitations took the form of an email titled: “I’m too old for this xxxx!!” [Expletive deleted.] Included with this email was Respondent’s four-page “complete history” of the charges and the DHP decision. This explanation varies greatly from the facts found by the DHP five months earlier, misstates that only two of the three members of the DHP found against the Respondent,- and concludes by stating that Respondent had “appealed” the matter to this Court and the argument was set for February 24,2016.
As a result of Respondent’s solicitations, thirty-five attorneys and three sitting Missouri judges sent letters to the Office of the Chief Disciplinary Counsel (“OCDC”). None of these letters purport to offer any first-hand knowledge of the facts charged by the OCDC and found by the DHP. Instead, the letters merely attest to Respondent’s good character and reputation and laud his service to our country as a combat veteran. On February 25, the day after the matter was argued and submitted to this Court, Respondent’s counsel asked the OCDC to forward these letters to this Court. The OCDC complied, submitting the packet of letters to the clerk of this Court under Rule 84.20.
Respondent’s letters are not before this Court. They were not presented to the DHP, see Rule 5.19(d) (where respondent rejects DHP’s decision, the OCDC “shall file in this Court the complete record made before the disciplinary hearing panel”), nor did Respondent move to supplement the record in this Court. Even if Respondent had sought to make these letters part of the record, they likely would not have been admitted because they lack probative value regarding either Respondent’s misconduct or the appropriate discipline. This Court has noted:
Evidence of good character is much more appropriate in regard to assessment of sanctions for discipline where the attorney has admitted to the misdeeds and shows some remorse. It is then helpful to fathom just what sanctions are most likely to preserve the integrity of the profession and protect the public. But where, as here, the accused stands in unbowed opposition to the administration of justice, though the evidence against him is far greater than that required by disciplinary proceed- *767 mgs, and no remorse is shown, evidence of otherwise good character is less of an aid in fashioning sanctions.
Critical to any opinion as to the appropriate sanction is a full knowledge of the conduct alleged and charged. The character witnesses who testified indicated that they were not familiar with the conduct charged in the information.
In re Frick, 694 S.W.2d 473, 480 (Mo. banc 1985).
Rather than attempting to include these letters in the record before the DHP or this Court, Respondent’s counsel merely requested that the OCDC submit them to the clerk of the Court under Rule 84.20.[1] This does not make them part of the record, and it would no more be appropriate for the Court to consider these letters than if the authors had sent them directly to chambers or called individual judges in an attempt to alter the outcome of this proceeding.
But it is not sufficient merely to note the futility of Respondent’s letter-writing campaign. Instead, this Court has made it plain in the past that such letters demonstrate a lack of understanding of the process spelled out in Rule 5 and a lack of respect for the canons of judicial ethics.
In passing we note that in addition to those who testified, one hundred forty-two prominent individuals or couples and 68 lawyers affixed their signatures to instruments denominated to be “ami-cus curiae briefs,” advocating acquittal of or leniency toward respondent. There is no evidence before us that any of these persons were more kriowledgeable of the facts surrounding respondent’s conduct than the character witnesses previously discussed.
It is unfortunate that recent cases, including this case, indicate that there may be a growing belief that the Missouri judiciary will be responsive to appellate practice techniques much resembling the letter writing bombardments and the petition signing campaigns to which legislative bodies are subjected. We do not believe that the citizens of Missouri either expect or want a judiciary which responds to such practices. Nor do we believe that such practices have a place in the orderly administration of justice under the rule of law. We have no difficulty in understanding and excusing what we believe to be the well-intentioned responses of those who are untrained in the law. It is no compliment to the Court, however, that there may exist within the profession those who believe that such tactics might inñuence the decision of the Court. Recognizing that there is an appropriate and legitimate use and function of amicus curiae briefs in our judicial process, we caution all that letter writing bombardments and petition signing campaigns are no part of that process and are not welcomed by the Court.
In re Frick, 694 S.W.2d at 480-81 (emphasis added and footnote omitted).
Accordingly, it bears repeating that the type of letters solicited by Respondent have little utility when properly offered as part of the record and no utility when sent *768 to this Court outside the record after the case has been argued and submitted.

. If letters of support are not presented to the DHP or otherwise made part of the record in this Court, it matters not how they are presented. See In re Frick, 694 S.W.2d at 480 n. 4 ("In the Application for Reinstatement of Donald M. Witte, (not reported), the Court was bombarded with 37 letters on behalf of the applicant, 19 being from members of the judiciary itself, 8 from lawyers, and 10 from prominent citizens in the area. In In the Matter of Kohn, 568 S.W.2d 255 (Mo. banc 1978), 32 letters were offered as an exhibit”).